IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KATHLEEN RANDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-1262-D |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED**.

### I. Procedural Background

Plaintiff's applications for benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision.

(TR. 30-37). The Appeals Council granted Plaintiff's request for review and issued a partially favorable decision finding that Plaintiff was disabled from March 31, 2012, but that Plaintiff was not disabled at any time from June 8, 2010 through March 30, 2012 (TR. 6-10).

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The Appeals Council (AC) first determined that Plaintiff had not engaged in substantial gainful activity since June 8, 2010, the alleged disability onset date. At step two, the AC determined that Plaintiff has the severe impairment of hypertension. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 8).

At step four, the AC found that Plaintiff has the residual functional capacity (RFC) to perform light work, except that she can only occasionally stoop kneel, and crouch; thus, she was able to perform her past relevant work as a hotel reservationist and customer services representative. Accordingly, Plaintiff was found to be not disabled from June 8, 2010, the alleged onset date, through March 30, 2012. (TR. 8).

## III. Issues Presented

Plaintiff urges on appeal that the ALJ erred in rejecting her obesity as a severe impairment; and that the ALJ's analysis of her pain and credibility was improper.

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

#### A. Plaintiff's obesity.

Plaintiff first argues that the ALJ erred at step two in finding Plaintiff's obesity to be non-severe. (ECF No. 11:4-5). Step two of the Sequential Evaluation Process, is governed by the Secretary's "severity regulation." *Bowen v. Yuckert*, 482 U.S. 137,140-41 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

The "severity regulation" provides that:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Secretary] will find that you do not have a severe impairment and are, therefore, not disabled. [The Secretary] will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). Pursuant to this regulation, claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." *Williams*, 844 F.2d at 751. This threshold determination is to be based on medical factors alone. Vocational factors,

such as age, education, and work experience, are not to be considered. *Bowen*, 482 U.S. at 153; *Williams*, 844 F.2d at 750. The mere presence of a condition, by itself, does not meet the burden of proof at step two; instead, the severity of an impairment is measured by its impact on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(b). These abilities and aptitudes include the following:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine setting.

20 C.F.R. § 404.1521(b).

Plaintiff's burden on the severity issue is *de minimis*. *Williams*, 844 F.2d at 751. As the United States Supreme Court explains, the Secretary's severity regulation

> increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants

> whose medical impairments are **so slight** that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.

*Bowen*, 482 U.S. at 153 (emphasis added). The Secretary's own regulations state that

> [g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

SSR 85-28. In other words, step two "is an administrative convenience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) (quoting *Farris v. Secretary of HHS*, 773 F.2d 85, 89 n. 1 (6th Cir. 1985)).

Plaintiff argues that she is 5'2" tall, weighs 213 pounds and has a BMI of 39, thus her obesity is presumptively severe. SSR 02-1p provides that:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

The medical record fails to show that Plaintiff has any functional limitations resulting from her obesity. The ALJ noted that the record documented little treatment for any impairment other than hypertension. (TR. 33). The ALJ further noted in his decision

5

that he considered the symptom-related limitations and restrictions alleged by Plaintiff stemming from the combined effects of her impairments, including obesity, and that such were included in the RFC assessment (TR. 33).

Thus, the ALJ properly considered Plaintiff's obesity and correctly observed that Plaintiff failed to meet her *de minimis* burden of showing that her obesity was a severe impairment at step two of the sequential evaluation process.

### B. The ALJ's Credibility Analysis

Plaintiff also challenges the ALJ's analysis of her pain and credibility (ECF No. 11:5-10). "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.* at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

In this case, the ALJ made the following credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Treatment notes in the record do not sustain the claimant's allegations of disabling pain and limitations . . . . The record does not contain any opinions from the period at issue from a treating or examining physician indicating that the claimant is disabled or even has limitations greater than

> those determined in this decision. . . . The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

(TR. 34, 35). The ALJ thoroughly discussed the medical evidence, the Plaintiff's testimony, and Plaintiff's activities of daily living. (TR. 34-35). In particular the ALJ reasoned that as of October 2010, it appeared that Plaintiff was doing better on her medications; that she was no longer seeking treatment for her symptoms; and that she reported her blood pressure readings at home revealed much better control. (TR. 34, 288). The ALJ also considered that there was no evidence that Plaintiff had sought medical treatment for headaches since June 2010 when they were attributed to hypertension. (TR. 35).

Plaintiff also makes the now familiar "*Bjornson*" argument—that the ALJ should have first evaluated Plaintiff's credibility and then formulated his RFC finding. (ECF No. 11:8-9). Plaintiff's *Bjornson* argument is without support in the Tenth Circuit. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1170 (10th Cir. 2012) ("use of ... boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.' ") (quoting *Hardman v. Barnhart,* 362 F .3d 676, 679 (10th Cir. 2004)). Last year, the Tenth Circuit specifically referenced a claimant's reliance on the Seventh Circuit decision in *Bjornson*, stating

> *1 Relying on *Bjornson v. Astrue,* 671 F.3d 640, 645–46 (7th Cir. 2012), [claimant] urges this court to reverse because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before

> discussing the factors that go into making that finding, including the credibility determination. We decline to reverse on this ground.

*Romero v. Colvin,* 563 F. App'x 618, 620, n 1 (10th Cir. 2014). The undersigned finds that the use of the template in this case is not improper.

Because the ALJ's analysis of the Plaintiff's pain and credibility is supported by substantial evidence in the record as a whole, the decision of the ALJ on this point should be affirmed.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 23, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 9, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE